UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CONNIE M. MCCROSSIN, Individually and as Personal Representative of the Estate of JOHN L. MCCROSSIN,<br><br>Plaintiff,<br><br>v.<br><br>**IMO INDUSTRIES, INC.**, individually and as successor-in-interest to DE LAVAL TURBINE, INC.;<br>**LOCKHEED SHIPBUILDING COMPANY**;<br>**LONE STAR INDUSTRIES, INC.**, individually and as successor-in-interest to PIONEER SAND & GRAVEL COMPANY;<br>**METROPOLITAN LIFE INSURANCE COMPANY**;<br>**UNION CARBIDE CORPORATION**; and<br>**FRASER'S BOILER SERVICE, INC.**,<br><br>Defendants. | CASE NO. 3:14-cv-05382<br><br>ORDER:<br><br>(1) DENYING LONE STAR INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT; AND<br><br>(2) DENYING LOCKHEED SHIPBUILDING COMPANY'S MOTION FOR SUMMARY JUDGMENT |

  This matter comes before the Court on Defendant Lone Star Industries, Inc.'s ("Lone Star") Motion for Summary Judgment (Dkt. 158) and Defendant Lockheed Shipbuilding

Company's ("Lockheed") Motion for Summary Judgment (Dkt. 163). The Court has considered the pleadings filed in support of, and opposition to, the motions and the file herein and determined that the Court can rule on these motions without oral argument.

## PROCEDURAL HISTORY

The complaint in this matter alleges claims for wrongful death and survivorship, alleging claims based on product liability; negligence; conspiracy; spoliation; willful or wanton misconduct; strict product liability; premises liability; breach of warranty; RCW 62A; enterprise liability; market-share liability and/or market-share alternate liability; and any other applicable theory of liability. Dkt. 127.

On January 12, 2015, Lone Star and Lockheed filed motions for summary judgments. Dkt. 158, 163. On February 2, 2015, plaintiff filed responses to defendants' motions. Dkt. 202-203. On February 6, 2015, Lone Star and Lockheed filed replies. Dkt. 209, 212.

## RELEVANT FACTS

In the 1960s, the U.S. Navy ("Navy") contracted with Lockheed to build an amphibious Transport Dock warship, the USS Trenton ("Trenton"). In 1971, the Trenton was built according to the Navy's specifications as required under the contract. Among other things, the contract required that the Trenton contain asbestos-containing materials. Dkt. 163, at 3. Plaintiff alleges that these materials included refractory cement known as Insulag. Dkt. 202, at 4. Plaintiff further alleges that these materials were distributed by Lone Star's predecessor, Pioneer Sand & Gravel ("Pioneer"), a Seattle based company. *Id*. In 1959, before the Navy contracted with Lockheed to build the Trenton, Lone Star had acquired Pioneer. Dkt. 158, at 5.

Lone Star alleges that the two contractors who performed work on the Trenton were non-parties Owens Corning Fiberglass ("Owens") and Unicor. *Id*., at 6. Lone Star further alleges that

1 neither Owens nor Unicor supplied any products to Pioneer. *Id*. Rather, Lone Star alleges,

2 Fraser's Boiler Service supplied and installed the refractory materials in question. *Id*. In addition,

3 Lone Star alleges that Insulag could not have been used on the Trenton because Insulag did not

4 meet the Navy's specifications. *Id*., at 7. Plaintiff alleges, however, that Pioneer not only

5 distributed Insulag at the time, but also exclusively supplied it. Dkt. 202, at 5-8.

6       Lockheed alleges that certain of Trenton's aspects were incomplete, including insulation

7 in the engine rooms and on boilers, when the Navy nonetheless accepted the Trenton. Dkt. 163,

8 at 4.[1] Thereafter, Lockheed alleges that it performed no additional work on the Trenton and that

9 the Navy, not Lockheed, "installed and/or otherwise repaired" asbestos-containing materials on

10 the Trenton. *Id*.

11       Between 1974 and 1976, Mr. John L. McCrossin served in the Navy aboard the Trenton

12 as a personnelman. Plaintiff alleges that Mr. McCrossin was exposed to asbestos during both the

13 Trenton's normal operations and the Trenton's first overhaul in New York in 1975. Dkt. 127, at

14 3. Plaintiff alleges that, during the overhaul, the majority of asbestos originally installed on the

15 Trenton remained in place. Dkt. 202, at 8-9. In addition to performing his duties as a

16 personnelman during the overhaul, Mr. McCrossin stated in his deposition that he stood "fire

17 watches" eight to twelve hours per week in the Trenton's engine rooms. Dkt. 134, 202. There,

18 after workers would finish their job, Mr. McCrossin stated in his deposition that he would be

19 called upon to clean out debris; he recalled that insulation was torn out from steam lines, that

20 refractory was torn out of boilers, and that dust and debris were everywhere, a condition that, he

21

22

23 [1] Lockheed has elsewhere asserted not only that the Trenton was constructed in compliance with the Navy's specifications (see, e.g., Dkt. 144, at 2 and Dkt. 147, at 2), but also that the Navy would not have accepted the Trenton if the Trenton had failed to meet the specifications in

24 question (see, e.g. Dkt. 144, at 4 and Dkt. 182, at 3-4).

1  claimed, exposed him to asbestos. Dkt. 202, at 2-3, 9. Lockheed alleges, however, that Mr.

2  McCrossin was not present for the entire overhaul period. Dkt. 163, at 7.

3      Mr. McCrossin claimed that, as a result, he developed malignant mesothelioma

4  ("mesothelioma"), a form of cancer that can develop when one inhales asbestos particles, which

5  was diagnosed on February 21, 2014. Dkt. 134, at 2. Mr. McCrossin died on August 26, 2014, at

6  the age of 58. Dkt. 80. Ms. Connie McCrossin, Mr. McCrossin's wife, has been appointed as a

7  personal representative of Mr. McCrossin's estate (Dkt. 127) and is the plaintiff in the present

8  action.

9                          SUMMARY JUDGMENT STANDARD

10     Summary judgment is proper only if the pleadings, the discovery and disclosure materials

11 on file, and any affidavits show that there is no genuine issue as to any material fact and that the

12 movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is

13 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

14 showing on an essential element of a claim in the case on which the nonmoving party has the

15 burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

16 of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

17 for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

18 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

19 metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a

20 material fact exists if there is sufficient evidence supporting the claimed factual dispute,

21 requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

22 *Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

23 *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

24

1    The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1106 (9th Cir.2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. *Id.; see also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885 (1990); *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan,* 929 F.2d at 1409.

1      If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. *Nissan,* 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. *Id.*

    If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. *Id.* This is true even though the non-moving party bears the ultimate burden of persuasion at trial. *Id.* at 1107.

## DISCUSSION

**A. Lone Star's motion for a summary judgment**

    Lone Star's argument as to why the Court should grant summary judgment is fourfold. First, Lone Star argues that Mr. McCrossin's alleged exposure to Lone Star products containing asbestos is an impermissible speculation because plaintiff's witnesses can withstand no scrutiny (Dkt. 158); and Insulag could not have been used on the Trenton because Insulag failed to meet the Navy's specifications (*Id.*).

    Second, Lone Star argues that maritime law applies to plaintiff's claims and that, under maritime law, no reasonable jury could conclude that Lone Star products were the substantial cause of Mr. McCrossin's mesothelioma. *Id*. Specifically, Lone Star argues that plaintiff cannot prove that any exposure was substantial for a substantial duration to have caused his mesothelioma, as required under maritime law. *Id*. Lone Star further argues that plaintiff's evidence is too attenuated as whether any Lone Star products were installed on the Trenton and as to whether these products, if any, remained in place during the overhaul. *Id.*

1    Third, even if Washington law applies, Lone Star argues that summary judgment is
2 appropriate because plaintiff's evidence will allow a jury to only speculate regarding causation in
3 this case. *Id*.
4    Fourth, Lone Star argues that the Navy's own negligence was a superseding cause of Mr.
5 McCrossin's mesothelioma. *Id*.
6    In response, plaintiff agrees that maritime law governs her negligence and product
7 liability claims. Dkt. 202. However, plaintiff argues that, under maritime law, circumstantial
8 evidence is sufficient to create an issue of fact as to the exposure and causation issues. *Id*.
9 Relying on the testimonies of Messrs. Robert Crnich, Bruce Curtis, Geral Barlow, Captain
10 Burger, and Alan Evans, plaintiff argues that an issue of fact exists to whether Mr. McCrossin
11 was exposed to Lone Star's products, alleging that Mr. McCrossin routinely sustained high
12 exposures to Insulag, which was prevalent in the Trenton's engine rooms. *Id*. Similarly, plaintiff
13 argues that a genuine issue of material fact exists as to causation in this case also because Dr.
14 Carl A. Brodkin, plaintiff's occupational health expert, has opined that Mr. McCrossin's
15 exposure to asbestos during the overhaul was a substantial factor in causing his mesothelioma.
16 *Id*.
17    In reply, Lone Star argues that plaintiff has failed to show that an issue of fact exists as to
18 causation in this case because plaintiff has offered no evidence that Insulag met the Navy's
19 specifications. Dkt. 209. In addition, Lone Star argues that plaintiff's position is so implausible
20 as to render plaintiff's witnesses' testimonies insufficient to create any such issue. *Id*. Lone Star
21 points out that plaintiff has admitted that the Trenton was built under the Navy's specifications;
22 that plaintiff's witnesses testified that the Navy would not use a product that failed to meet the
23 specifications; and that plaintiff has offered no evidence that the two contractors who installed
24

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 7

insulation on the Trenton purchased any products from Pioneer, Lone Star's predecessor. *Id*. Finally, Lone Star argues that what plaintiff's witnesses, in fact, saw was Pioneer deliver non-asbestos materials and that Pioneer could not have warned the Navy or Mr. McCrossin of any asbestos hazards because Pioneer had no direct knowledge of any such hazards. *Id.*

   a. *Genuine issues of material fact regarding causation in plaintiff's negligence and product liability claims*

The record shows that Lone Star has met its burden of production by negating causation, an essential element of plaintiff's claims against Lone Star. By way of example, Lone Star's expert, Mr. John Graham, testified that Insulag could not have been used on the Trenton. Dkt. 160, at 3. The issue is whether plaintiff has produced specific evidence that a genuine issue of material fact exists as to whether Lone Star requisitely caused Mr. McCrossin's mesothelioma. The Court need not at this time reach the issue of which law governs this case because, for the purposes of Lone Star's motion for a summary judgment, the Court should conclude that plaintiff has raised genuine issues of material fact sufficient to defeat Lone Star's motion under either state or maritime law.

Specifically, plaintiff has raised genuine issues of material fact by citing to deposition testimony that Insulag was not only used on the Trenton, but also installed both in the engine rooms and on the boilers and turbine, the location and equipment Mr. McCrossin described working in and with. For example, Mr. Curtis and Captain Burger testified in their depositions that Pioneer trucks had been delivering Insulag to Lockheed. Dkt. 202-1, at 23, 106, 115-116. Likewise, Mr. Evans, who performed work in the Trenton's engine rooms, testified that Insulag was used on the Trenton and that Pioneer delivered it to the shipyard. *Id*., at 91. In addition, Captain Wilson testified that Mr. McCrossin could not have performed the work Mr. McCrossin described performing without disturbing any asbestos-containing materials (*Id*., at 123) and that

1  most of these materials were on the Trenton during the overhaul (*Id*., at 122). Moreover, Dr.

2  Brodkin opined that "Mr. McCrossin's work with the asbestos-containing materials on the

3  [Trenton] during the overhaul in 1975 and 1976 represent both a high intensity and prolonged

4  duration of asbestos exposure." Dkt. 202-2, at 8.

5      Accordingly, the Court should conclude that genuine issues of material fact exist as to

6  whether Lone Star caused Mr. McCrossin's mesothelioma. Although Lone Star contends that

7  plaintiff's witnesses can withstand no scrutiny and that plaintiff's position is implausible, for the

8  reasons stated above, to raise a genuine issue of material fact, the Court should conclude that

9  these witnesses' testimonies are adequate for the purposes of Lone Star's motion for a summary

10 judgment.

11     *b.  Genuine issues of material facts regarding Lone Star's superseding cause defense*

12     Lone Star argues that the Navy prevented both Lone Star and Pioneer from effectively

13 communicating any product warnings to their product users and that Mr. McCrossin would have

14 been exposed to asbestos only due to the Navy's negligence in enforcing any protective

15 measures. Dkt. 158. In a negligence case, as here, a defendant bears the burden of showing any

16 superseding cause obviating liability. Accordingly, the issue is whether Lone Star has shown that

17 no genuine issues of material fact exist as to whether the Navy was a superseding cause of Mr.

18 McCrossin's mesothelioma.

19     A genuine issue of material fact exists as to whether the Navy prohibited any asbestos

20 warnings on the Trenton. See Dkt. 200. By way of example, Captain Burger testified that the

21 Navy "would have welcomed any help they could get in the way of warning and protecting their

22 people" and that "[the Navy] would have allowed [asbestos warnings on asbestos insulation on

23 the Trenton]." Dkt. 164-3, at 64-65.

24

1    In addition, even if the Navy would have allowed asbestos warnings on the Trenton, a
2 genuine issue of material fact exists as to whether the Navy, in fact, failed to enforce any
3 asbestos precautions during the times pertinent hereto, a premise Lone Star has assumed in
4 arguing the superseding cause defense. As a threshold matter, Lone Star has presented no
5 evidence that, if uncontroverted at trial, would show that the Navy was negligent in enforcing
6 any asbestos precautions. Admiral Roger B. Horne, for example, stated in his report that "the
7 Naval instructions that came out were effective in controlling the asbestos hazards" and that
8 "strict effective procedures and training were accomplished." Dkt. 183-1, at 10.
9    Accordingly, the Court should conclude that a genuine issue of material fact exists as to
10 whether the Navy was a superseding cause of Mr. McCrossin's mesothelioma.

11 **B.  Lockheed's motion for a summary judgment**

12   As a threshold matter, Lockheed argues that maritime law governs this case. Dkt. 163.
13 Under maritime law, Lockheed argues, plaintiff's claims fail as a matter of law for the following
14 three reasons: First, plaintiff cannot meet the requisite causation test because plaintiff lacks
15 competent evidence that Mr. McCrossin was exposed to any asbestos-containing materials
16 originally installed on the Trenton. *Id*. Second, plaintiff's strict product liability claim fails as a
17 matter of law not only because plaintiff lacks any proof that Mr. McCrossin was exposed to any
18 originally installed asbestos-containing materials, but also because the Trenton is not a "product"
19 within maritime law's meaning. *Id*. Finally, Lockheed argues that plaintiff's claims are barred
20 under the doctrine of sovereign immunity. *Id*.
21   In response, plaintiff concedes that maritime law governs this case; that a Navy ship is
22 not a "product" subject to strict liability; and that plaintiff's claims against Lockheed are,

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 10

1  therefore, limited to negligence. Dkt. 203, at 5.[2] Relying on expert testimony, plaintiff argues

2  that a jury could reasonably find that Mr. McCrossin was exposed to asbestos that Lockheed, not

3  the Navy, had installed on the Trenton and that any such exposure was a substantial factor in

4  causing his mesothelioma. Dkt. 203.

5        In reply, Lockheed, again, argues that plaintiff cannot establish causation as a matter of

6  law because plaintiff has failed to produce any evidence from a witness with personal knowledge

7  that Mr. McCrossin was exposed to asbestos-containing materials originally installed on the

8  Trenton. Dkt. 212.

9       *a. Genuine issues of material fact regarding causation in plaintiff's negligence claim*

10        Lockheed has discharged its burden of production by negating causation, an essential

11  element of plaintiff's negligence claim. In the form of Mr. Thomas McCaffery's declaration, for

12  example, Lockheed has produced evidence purporting to show that the Navy, and not Lockheed,

13  installed the asbestos-containing materials on the Trenton. Dkt. 166-3, at 2-12. In addition,

14  Lockheed has cited to Mr. McCrossin's deposition testimony where he stated that he blamed the

15  Navy for exposing him to asbestos. Dkt. 164-2, at 12. As a result, the issue is whether plaintiff

16  has produced specific evidence showing that a genuine issue of material fact exists as to whether

17  Lockheed caused his mesothelioma. For the purposes of Lockheed's motion, the Court need not

18  decide at this time whether maritime law governs this case because the Court should conclude

19  that plaintiff has discharged her burden under either state or maritime law.

20        Plaintiff has controverted Lockheed's evidence by citing to deposition testimony to

21  undermine Lockheed's expert's averments and by submitting plaintiff's own experts'

22  ――――――――――――――

23  [2] Curiously, in a stipulation and order of dismissal with prejudice of certain claims against Lone Star, plaintiff states that she will pursue a strict product liability claim against Lone Star. Dkt.
24  207.

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT - 11

1 testimonies. Plaintiff has cited Lockheed's own expert, Captain Charles Wasson, who testified
2 that most of the insulation originally installed on the Trenton was on the Trenton when the
3 Trenton entered New York for the overhaul. Dkt. 203-1, at 92. Although Lockheed's evidence
4 purports to show that the Navy, not Lockheed, installed any asbestos-containing materials on the
5 Trenton after the Navy had accepted the Trenton from Lockheed, Captain Francis Burger,
6 plaintiff's expert with personal knowledge of the pertinent events, recalled that Lockheed, not
7 the Navy, completed most of these items. Dkt. 203-3, at 7-8. In fact, Lockheed itself has
8 previously stated that "[t]he Navy accepted delivery only of ships that complied with the Navy's
9 contract specifications, passed sea ship inspections, and had any deficiencies resolved by the
10 contractor." Dkt. 182, at 4.

11       In addition, Captain Burger stated in his deposition that "the amount of asbestos
12 potentially disturbed [before the overhaul] pales in comparison to the amount of asbestos-
13 containing materials that were disturbed during the [Trenton's] first major overhaul." Dkt. 203-2,
14 at 9. Captain Burger further averred that Mr. McCrossin likely repeatedly came in contact with
15 asbestos-containing materials originally installed on the Trenton. *Id.*, at 11. Although Lockheed
16 raises issues as to Captain Burger's testimony's factual sufficiency, the Court should conclude
17 that Captain Burger's testimony is sufficient for the purposes of Lockheed's motion for a
18 summary judgment.

19       Moreover, plaintiff has produced evidence that any asbestos exposure was a substantial
20 factor in causing Mr. McCrossin's mesothelioma. Plaintiff's industrial hygiene expert, Mr.
21 William Ewing, opined that Mr. McCrossin "had a significant airborne exposures to asbestos"
22 during the overhaul. Dkt. 79, at 13. Similarly, Dr. Brodkin opined not only that Mr. McCrossin's
23 exposure was high in intensity and prolonged in duration, but also that any such exposure was a
24

substantial factor in causing his mesothelioma. Dkt. 203-2, at 8, 10-11. Although Lockheed argues that any such exposure would have resulted from the Navy's work, plaintiff has raised a genuine issue of material fact as to whether Lockheed, and not the Navy, originally installed any asbestos-containing materials on the Trenton.

Based on the foregoing, the Court should conclude that genuine issues of material fact exist as to whether Lockheed caused Mr. McCrossin's mesothelioma.

b. *Lockheed's derivative sovereign immunity defense*

Lockheed argues that, under *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940), the doctrine of sovereign immunity independently bars plaintiff's claims against Lockheed in this case. Dkt. 163. In response, plaintiff argues that a genuine issue of material fact exists as to whether Lockheed is entitled to this defense because this defense has been superseded by the government contractor defense and that the Court has already ruled on this issue, concluding that genuine issues of material fact exist when the Court denied plaintiff's motion for a partial summary judgment. Dkt. 203. In reply, Lockheed argues that the derivative sovereign immunity and government contractor defenses are separate, though related, defenses arising under different circumstances. Dkt. 212.

For the purposes of Lockheed's motion for a summary judgment, even if the derivative sovereign immunity is a separate defense, a genuine issue of material fact exists as to the defense's essential element. The *Yearsley* Court based this defense on traditional agency principles where the contractor-agent had no discretion in the design process and completely followed the government's specifications. *Yearsley*, 309 U.S. at 20-22. Lockheed argues that this doctrine bars plaintiff's claims because "the Navy controlled all aspects of the design, manufacture, and use of [the Trenton], but delegated the task of constructing the [Trenton] to

[Lockheed]" and that "[t]he Navy likewise controlled all warnings that could be applied to, or associated with, [the Trenton]. Dkt. 163, at 23. In addressing plaintiff's motion for a partial summary judgment on the government contractor defense, the Court has already concluded that a genuine issue of material fact exists as to this particular issue, which overlaps with the government contractor defense. Dkt. 200. Accordingly, the Court should conclude that a genuine issue of material fact exists as to whether the derivative sovereign immunity defense, if any, bars plaintiff's claims against Lockheed in this case.

CONCLUSION

For the foregoing reasons, genuine issues of material fact exist as to causation, an essential element of plaintiff's claims, as it relates to both Lockheed and Lone Star. The Court should deny defendants' motions for summary judgments.

Accordingly, it is hereby **ORDERED** that

Lone Star Industries, Inc.'s Motion for Summary Judgment (Dkt. 158) is **DENIED**.

Lockheed Shipbuilding Company's Motion for Summary Judgment (Dkt. 163) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 11th day of February, 2015.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge