UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CONNIE M. MCCROSSIN, Individually and as Personal Representative of the Estate of JOHN L. MCCROSSIN,<br><br>Plaintiff,<br><br>v.<br><br>**IMO INDUSTRIES, INC.**, individually and as successor-in-interest to DE LAVAL TURBINE, INC.;<br>**LOCKHEED SHIPBUILDING COMPANY**;<br>**LONE STAR INDUSTRIES, INC.**, individually and as successor-in-interest to PIONEER SAND & GRAVEL COMPANY;<br>**UNION CARBIDE CORPORATION**; and<br>**FRASER'S BOILER SERVICE, INC.**,<br><br>Defendants. | CASE NO. 3:14-cv-05382-RJB<br><br>ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on defendant Fraser's Boiler Service, Inc.'s ("Fraser's") Motion for Summary Judgment or, in the alternative, Motion for Partial Summary

ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT - 1

Judgment. Dkt. 188. The Court has considered the pleadings filed in support of, and opposition to, the motion and the file herein. The Court can rule on this motion without oral argument.

PROCEDURAL HISTORY

Proceeding on her amended complaint for wrongful death and survivorship, plaintiff alleges claims based on product liability; negligence; conspiracy; spoliation; willful or wanton misconduct; strict product liability; premises liability; breach of warranty; RCW 62A; enterprise liability; market-share liability and/or market-share alternate liability; and any other applicable theory of liability. Dkt. 127.

On January 26, 2015, Fraser's filed a motion for a summary judgment or, in the alternative, a partial summary judgment. Dkt. 188.

Plaintiff filed a response on February 17, 2015 (Dkt. 217), and Fraser's filed a reply on February 20, 2015 (Dkt. 219).

RELEVANT FACTS

In the 1960s, the U.S. Navy ("Navy") contracted with Lockheed Shipbuilding Company ("Lockheed") to build an amphibious Transport Dock warship, the USS Trenton ("Trenton"). In 1971, the Trenton was built according to the Navy's specifications as required under the contract. The contract required, among other things, that the Trenton contain asbestos materials. Dkt. 163, at 3. Plaintiff claims that some of these materials, such as boilers, were not only installed, but also manufactured, sold, and distributed by Fraser's, a boiler subcontractor. Dkt. 217, at 9.

Fraser's alleges, however, that Fraser's neither manufactured nor sold boilers, boiler components, or any asbestos products. Dkt. 188, at 5. Rather, Fraser's alleges that Lockheed purchased unassembled boilers from Foster Wheeler and that Fraser's merely assembled the boilers. *Id.*, at 4.

ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT - 2

1    Between 1974 and 1976, Mr. John L. McCrossin served in the Navy aboard the Trenton
2  as a personnelman. Plaintiff alleges that Mr. McCrossin was exposed to asbestos during both the
3  Trenton's normal operations and the Trenton's first overhaul in New York in 1975. Dkt. 127, at
4  3. In addition to performing his duties as a personnelman, Mr. McCrossin stated in his deposition
5  that, during the overhaul, he stood "fire watches" eight to twelve hours per week in the Trenton's
6  engine rooms. Dkt. 134, 202. There, after workers would finish their job, Mr. McCrossin stated
7  in his deposition that he would be called upon to clean out debris; he recalled that insulation was
8  torn out from steam lines, that refractory was torn out of boilers, and that dust and debris were
9  everywhere, a condition that, he claimed, exposed him to asbestos. Dkt. 202, at 2-3, 9.
10   Mr. McCrossin claimed that, as a result, he developed malignant mesothelioma
11 ("mesothelioma"), a form of cancer that can develop when one inhales asbestos particles, which
12 was diagnosed on February 21, 2014. Dkt. 134, at 2. Mr. McCrossin died on August 26, 2014, at
13 the age of 58. Dkt. 80. Ms. Connie McCrossin, Mr. McCrossin's wife, has been appointed as a
14 personal representative of Mr. McCrossin's estate (Dkt. 127) and is the plaintiff in the present
15 action.

16                    SUMMARY JUDGMENT STANDARD

17   Summary judgment is proper only if the pleadings, the discovery and disclosure materials
18 on file, and any affidavits show that there is no genuine issue as to any material fact and that the
19 movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is
20 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient
21 showing on an essential element of a claim in the case on which the nonmoving party has the
22 burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue
23 of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

24 ORDER DENYING FRASER'S BOILER
   SERVICE, INC.'S MOTION FOR SUMMARY
   JUDGMENT - 3

for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1106 (9th Cir.2000).

ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT - 4

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. *Id.; see also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885 (1990); *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan,* 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. *Nissan,* 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. *Id.*

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. *Id.* This is true even though the non-moving party bears the ultimate burden of persuasion at trial. *Id.* at 1107.

DISCUSSION

**A. Fraser's superseding cause defense**

In a negligence case, as here, a defendant bears the burden of showing any superseding cause obviating liability. The issue is whether Fraser's, the moving party, has shown that no genuine issues of material fact remain as to whether the Navy was a superseding cause of Mr. McCrossin's mesothelioma. Fraser's has failed to discharge this burden.

Assuming that Fraser's caused Mr. McCrossin's mesothelioma, Fraser's relies on *Little v. PPG Indus., Inc.*, 19 Wn. App. 812 (1978), *modified*, 92 Wn. 2d 118 (1979) to argue that the Navy's conduct was a superseding cause of Mr. McCrossin's exposure to asbestos because the Navy knew of asbestos dangers and failed to warn or otherwise protect Mr. McCrossin from these dangers. Dkt. 188.

In response, relying on *Campbell v. ITE Imperial Corp.*, 107 Wn. 2d 807 (1987), plaintiff argues that Fraser's superseding cause defense fails as a matter of law because (1) the harm caused by the Navy's negligence is identical to the harm caused by Fraser's own admitted failure to warn; (2) one could foresee that the Navy would fail to warn sailors, including Mr. McCrossin, of asbestos dangers; and (3) the Navy's negligence did not operate independently of Fraser's failure to warn, the three *Campbell* factors. Dkt. 217.

In reply, Fraser's argues that the Navy's negligence was not reasonably foreseeable, which, Fraser's argues, is "the touchstone for the application of the defense." Dkt. 219.

Here, the parties agree that foreseeability is the key consideration but disagree over whether the Navy's alleged negligence was foreseeable; however, as a threshold matter, the issue is whether the Navy's was, in fact, negligent.

Although plaintiff argues that the *Campbell* court held that "the appropriate inquiry was not whether the employer was negligent, but whether such negligence was foreseeable" (Dkt. 217, at 3-4), the employer's negligence was not at issue in *Campbell*. There, the manufacturer argued that the employer's failure to warn and properly protect the plaintiff constituted a superseding cause. *Campbell*, 107 Wn. 2d 807 at 814. The *Campbell* court rejected this argument, stating that the question "for [that] court" was whether this failure was foreseeable. *Id*.

ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT - 6

Stated differently, in *Campbell*, the employer's negligence alone was not sufficient to obviate the manufacturer's liability: the employer's negligence must have been unforeseeable.

In addition, the three *Campbell* factors are not exhaustive. *Id.*, at 812. The *Campbell* court relied on Restatement (Second) of Torts (1965) § 442, for example, whose fifth factor "of importance" is whether "the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him." Fraser's itself agrees that "for the doctrine to insulate prior actors from liability, there must be evidence that the employer knew of the dangers of the product and failed to warn its employees of those dangers." Dkt. 188, at 11. Under the circumstances of the present case, the Navy's failure to protect Mr. McCrossin is not sufficient standing alone but necessary to prevail on this defense.

Here, unlike in *Campbell*, a genuine issue of material fact exists as to whether the Navy, in fact, failed to protect Mr. McCrossin. Although Fraser's argues that summary judgment is appropriate because the Navy failed to "warn or protect" Mr. McCrossin, Fraser's has presented no evidence to that effect. More specifically, Fraser's argues that "[t]he issue of proof of the Navy's negligence is found in the *plaintiff's* assertions that Mr. McCrossin was exposed to asbestos during his time aboard the Trenton in 1974 to 1976" and that "[i]f the Navy had been strictly following its abatement procedures indisputably in place *at that time*, Plaintiff has to concede there would not have been any asbestos exposure to Mr. McCrossin." Dkt. 219, at 10.

The Court should reject this argument because, as a matter of law, a finding of asbestos exposure requires no finding of breach, duty, or causation: these are separate and distinct elements to a negligence claim. Moreover, evidence shows that the Navy chose to address asbestos hazards through precautions other than warning labels. Dkt. 182. Admiral Roger B. Horne, for example, stated in his report that "the Naval instructions that came out were effective

ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT - 7

1 in controlling the asbestos hazards" and that "strict effective procedures and training were
2 accomplished." Dkt. 183-1, at 10. Finally, Fraser's has conceded that the Navy "had specific
3 directives on handling asbestos on ocean-going vessels which were contained in manuals." Dkt.
4 219, at 9. Conceivably, a reasonable jury could conclude that the Navy properly protected Mr.
5 McCrossin.

6 In sum, Fraser's has presented no evidence that, if uncontroverted at trial, would show
7 that the Navy, in fact, failed to protect Mr. McCrossin from any asbestos dangers. Even if the
8 Navy was negligent, however, a genuine issue of material fact exists as to whether the Navy's
9 negligence was reasonably foreseeable. To the extent that Fraser's has presented evidence that, if
10 uncontroverted at trial, would entitle Fraser's to prevail on this defense, plaintiff has set forth
11 specific facts controverting Fraser's *prima facie* case. By way of example, plaintiff has produced
12 evidence purporting to show that the Navy's asbestos regulations were not uniformly followed
13 and that, throughout the 1970s, asbestos continued to be stripped off piping, boilers, and
14 associated machinery at Navy shipyards without prior abatement. Dkt. 217, at 7. A reasonable
15 jury could find that the Navy's negligence, if any, was reasonably foreseeable.

16 Accordingly, the Court should conclude that genuine issues of material fact exists as to
17 whether the Navy was a superseding cause of Mr. McCrossin's mesothelioma.

18 **B. <u>Plaintiff's strict liability claims</u>**

19 Plaintiff bears the burden of proof on this claim at trial. Accordingly, the initial inquiry is
20 whether Fraser's has discharged its burden of production by (a) either producing evidence
21 negating an essential element of this claim or (b) showing that plaintiff has insufficient evidence
22 of an essential element of this claim to carry her ultimate burden of persuasion at trial. It is not
23 clear whether Fraser's has fulfilled either burden here.

24 ORDER DENYING FRASER'S BOILER
SERVICE, INC.'S MOTION FOR SUMMARY
JUDGMENT - 8

1       Fraser's argues that plaintiff must prove that Fraser's distributed, manufactured, or sold

2   the asbestos-containing boilers to maintain a strict liability claim; that plaintiff has produced no

3   such evidence; and that Fraser's provided only services and neither sold nor distributed the

4   boilers in question. Dkt. 188.

5       In response, plaintiff argues that the record supports the claim that Fraser's manufactured

6   and sold the asbestos-containing boilers installed on the Trenton. Dkt. 217. In addition, plaintiff

7   argues that Fraser's' evidence is insufficient to meet Fraser's burden of production because

8   Fraser's witnesses have purportedly admitted that they lack foundation to testify on this issue. *Id*.

9       In reply, Fraser's insists that it was not a "product seller" of the boilers in question to be

10  strictly liable. Dkt. 219.

11      The parties agree that pre-Washington Product Liability Act ("WPLA") common law

12  governs plaintiff's strict liability claim as WPLA went into effect after the events in question,

13  with no retroactive effect. Dkt. 217, at 12. Under the pre-WPLA common law:

14  > "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to
15  > the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or
16  > consumer without substantial change in the condition in which it is sold."

17  Restatement (Second) of Torts § 402A(1) (1965). Comment *f* states that the rule is intended to

18  apply to any manufacturer, wholesale or retail dealer, or distributor; and liability is extended to

19  those in the chain of distribution. *Seattle-First Nat. Bank v. Tabert*, 86 Wn. 2d 145, 148 (1975).

20      Here, the issue is whether Fraser's has (a) produced evidence negating that Fraser's was a

21  seller, manufacturer, or distributor of the boilers in question; or (b) shown that plaintiff has

22  insufficient evidence thereof. In the form of declarations of Mr. Bruce Fraser (Dkt. 190), Fraser's

23  president, and Captain Charles Wasson (Dkt. 191, at 3), Fraser's has submitted evidence that

24  ORDER DENYING FRASER'S BOILER
    SERVICE, INC.'S MOTION FOR SUMMARY
    JUDGMENT - 9

Fraser's did not manufacture, sell, design, or distribute the boilers. In the form of declarations of the same declarants, however, plaintiff appears to have submitted evidence that Mr. Fraser's declaration was not based on personal knowledge (Dkt. 227-1, 19) and that Captain Wasson has disclaimed the opinion Fraser's has attributed to him.[1] Accordingly, it is not clear whether Fraser's has negated that it was a seller, manufacturer, or distributer of the boilers in question, an essential element of plaintiff's strict liability claim.

Even if Fraser's has fulfilled its burden of production, plaintiff has produced specific evidence that a genuine issue of material fact exists as to whether Fraser's, in fact, sold, manufactured, or distributed the boilers in question. By way of example, plaintiff has cited to Mr. Fraser's deposition testimony that Fraser's "built boilers" for Lockheed and that the "shipyard" would hire Fraser's to build and deliver the boilers "all done and tested." *Id.*, at 31. Although Fraser's argues that the only proper question is whether Fraser's was a seller,[2] comment *f* states that the rule is intended to apply to any manufacturer, wholesale or retail dealer, or distributor. Restatement (Second) of Torts § 402A (1965), Comment *f*.

Accordingly, the Court should conclude that a genuine issue of material fact exists as to whether Fraser's was a seller, manufacturer, or distributed of the boilers in question under Restatement (Second) of Torts § 402A (1965).

---

[1] Although plaintiff cites to Captain Wasson's deposition testimony, which was allegedly taken after Fraser's had filed its motion for a summary judgment, as "Wasson Dep. at 31" (Dkt. 217, at 11), no such deposition, appears to be attached to plaintiff's response. Presumably, such deposition testimony exists; if not, plaintiff has otherwise raised genuine issues of material fact as to plaintiff's strict liability claim.

[2] In its motion for a summary judgment, Fraser's initially argued that "[i]n order to maintain a common law strict liability claim against [Fraser's], plaintiff must prove that [Fraser's] was a seller, manufacturer, or distributor of the boilers under Section 402A of *the Restatement (Second) of Torts*." (Dkt. 188, at 13).

ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT - 10

## C. Fraser's government contractor defense

Fraser's argues that the government contractor defense bars all plaintiff's claims against Fraser's because Fraser's neither sold nor distributed the boilers in question and because Fraser's played no role in deciding whether asbestos should be used in the boilers. Dkt. 188.

In response, plaintiff argues that this defense fails as a matter of law because Fraser's has failed to identify any Navy's "reasonably precise" specifications regarding asbestos warnings on the Trenton, as required under the government contractor defense, and because these specifications, in fact, are silent about warnings. Dkt. 217.

In reply, Fraser's argues that, as a subcontractor, it had no discretion in the boilers' design or installation process and merely followed the Navy's requirements; that Fraser's never decided not to affix any warnings to the boilers because these boilers were not its boilers; and that, aware of asbestos dangers, the Navy chose not to protect Mr. McCrossin. Dkt. 219.

The government contractor defense is an affirmative defense; Fraser's has the burden of establishing this defense. See *Snell v. Bell Helicopter Textron, Inc.,* 107 F.3d 744, 746 (9th Cir.1997). Accordingly, the issue is whether Fraser's, the moving party, has shown that no genuine issues of material fact exist as to the government contractor defense's essential elements.

To satisfy the government contract defense in a failure-to-warn case, the contractor must show that: (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; and (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government. *Getz v. Boeing Co.*, 654 F.3d 852, 866 (9th Cir. 2011); *accord Tate v. Boeing Helicopters,* 140 F.3d 654, 658–60 (6th Cir.1998); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 1003–04 (7th Cir.1996). In short, the contractor must demonstrate that the government

ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT - 11

"approved reasonably precise specifications," limiting the contractor's "ability to comply with [its] duty to warn." *Snell,* 107 F.3d at 749.

The issue is whether Fraser's obligations under the contract conflicted with Fraser's duties under state law. *Id*. This Court has already ruled that genuine issues of material fact exist as to whether the Navy exercised its discretion and approved certain warnings. Dkt. 200.

Although Fraser's argues that the Court should ignore this ruling to decide Fraser's motion for a summary judgment because the Court ruled only as to Lockheed, this ruling applies also to Fraser's motion for a summary judgment on the government contractor defense. In her motion for a partial summary judgment against Lockheed's government contractor defense, plaintiff presented evidence that Lockheed could have placed asbestos warnings on the Trenton and, therefore, comply with a state-law duty to warn. Dkt. 164-3, at 64; Dkt. 133, at 2. Lockheed controverted plaintiff's position by, *inter alia*, citing to Admiral Roger Horne's deposition testimony that the Navy not only dictated the warnings that could be placed on its ships, but also prohibited Lockheed from affixing any warnings not prescribed in the Navy's specifications. Dkt. 183-1, at 9. Accordingly, this Court has ruled that genuine issues of material fact exist as to whether the Navy exercised its discretion and approved certain warnings, limiting Lockheed's ability to comply with a state-law duty to warn. Dkt. 200.

Here, Fraser's has conceded that it "was bound by whatever requirements the Navy had for Lockheed regarding the boilers to be installed on the Trenton." Dkt. 219, at 2 (emphasis removed). Under these circumstances, genuine issues of material fact exist as to whether the Navy limited Fraser's, a Lockheed's subcontractor's, ability to comply with a state-law duty to warn, precluding a summary judgment on this defense.

//

ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT - 12

## CONCLUSION

For the foregoing reasons, genuine issues of material fact exist in this case, precluding a summary judgment or a partial judgment for Fraser's. The Court should deny Fraser's motion for a summary judgment, or, in the alternative, partial summary judgment.

Accordingly, it is hereby **ORDERED** that

Fraser's Boiler Service, Inc.'s Motion for Summary Judgment or, in the alternative, Motion for Partial Summary Judgment (Dkt. 188) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 23rd day of February, 2015.

*/s/ Robert J. Bryan*

ROBERT J. BRYAN
United States District Judge

ORDER DENYING FRASER'S BOILER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT - 13